















RYC   3/22/02   16:20

3:96-CV-02090   FOODMEX INC V. FOODMAKER INTERNATL

*375*

*O.*

02 MAR 21 PM 2:09

DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

FOODMEX, INC.,

                    Plaintiff,

  v.

FOODMAKER INTERNATIONAL FRANCHISING, INC. And FOODMAKER, INC.,

                    Defendant.

CASE NO. 96-CV-2090 J (POR)

**ORDER GRANTING IN PART, AND DENYING IN PART, COUNTER-CLAIMANT'S CLAIM FOR DAMAGES**

    This matter comes before the Court on Foodmaker International Franchising, Inc.'s claim for damages. This Court held a bench trial on March 12, 2002. Plaintiff Foodmex did not appear. For the reasons discussed below, the Court GRANTS IN PART and DENIES IN PART Foodmaker's claim for damages.

## BACKGROUND

    The facts giving rise to this case are outlined in this Court's June 28, 1999 Order granting partial summary judgment for Counter-claimants Foodmaker International Franchising, Inc. and Foodmaker, Inc. (hereinafter collectively "Foodmaker") on the First Amended Counterclaim. The Court found Foodmex liable on Claims One through Seven of the First Amended Counterclaim. The Court also granted a preliminary injunction against Foodmex. Six months later, on December 22, 1999,

375 -1-

1   Foodmex filed for bankruptcy in the United States Bankruptcy Court in the District of

2   Nevada.   The Bankruptcy Court granted relief from the automatic stay to allow

3   Foodmaker to liquidate their damages and pursue recovery against third parties.

4        This Court has already found Foodmex liable for trademark infringement. See

5   June 25, 1999 Order.  Foodmaker now seeks "the recovery of damages that may be

6   covered by policies of insurance." (Trial Brief at 4.) For the purposes of this damages

7   trial, Foodmaker abandoned claims One, Five, and Ten.[1] (Trial Brief at 4.) Foodmaker

8   now seeks damages under its trademark infringement claim.

9                                DISCUSSION

10  I. Damages for Trademark Infringement

11       A. Legal Standard

12       15 U.S.C. § 1117(a) provides for an award of "any damages sustained by the

13  plaintiff" in a trademark violation case.[2] See Bishop v. Equinox Intern. Corp., 154 F.3d

14  ———————————

15  [1]The First Amended Complaint lists nine claims. Claim One alleged breach of
    contract, Claim Five alleged unfair competition, and Claim Ten alleged breach  of
16  contract–promissory note. This Court found Foodmex liable on Claims One through
17  Seven.

18  [2]15 U.S.C. § 1117(a) states:
    When a violation of any right of the registrant of a mark registered in the Patent and
19  Trademark Office, or a violation under section 1125(a) of this title, shall have been
    established in any civil action arising under this chapter, the plaintiff shall be entitled,
20  subject to the provisions of sections 1111 and 1114 of this title, and subject to the
    principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the
21  plaintiff, and (3) the costs of the action.  The court shall assess such profits and
    damages or cause the same to be assessed under its direction.  In assessing profits the
22  plaintiff shall be required to prove defendant's sales only;  defendant must prove all
    elements of cost or deduction claimed.  In assessing damages the court may enter
23  judgment, according to the circumstances of the case, for any sum above the amount
    found as actual damages, not exceeding three times such amount.  If the court shall
24  find that the amount of the recovery based on profits is either inadequate or excessive
    the court may in its discretion enter judgment for such sum as the court shall find to be
25  just, according to the circumstances of the case.  Such sum in either of the above
    circumstances shall constitute compensation and not a penalty.  The court in
26  exceptional cases may award reasonable attorney fees to the prevailing party.

- 2 -

1  1220, 1222 (10th Cir. 1998).  Damages for trademark violations are "guided by tort law

2  principles," including the general rule that damages "must be established with reasonable

3  certainty." Lindy Pen Co., Inc. v. Bic Pen Corp., 982 F.2d 1400, 1407 (9th Cir. 1993)

4  (citations omitted).  The burden is with the plaintiff to "prove both the fact and the

5  amount of damage." First Savings Bank v. U.S. Bancorp, 117 F. Supp. 2d 1078, 1086 (D.

6  Kansas Sept. 13, 2000). Proof of actual damages may often be difficult. Lindy Pen Co.,

7  Inc., 982 F.2d at 1407. Damages are "typically measured by any direct injury which a

8  plaintiff can prove, as well as any lost profits which the plaintiff would have earned but

9  for the infringement." Id. Essentially, the "plaintiff must prove it has been damaged by

10 actual consumer confusion or deception resulting from the violation." First Savings

11 Bank, 117 F. Supp. 2d at 1086, citing Brunswick Corp. v. Spinit Reel Co. 832 F.2d 513,

12 525 (10th Cir.1987).  The plaintiff may use "direct evidence of confusion, sales diversions

13 or the public's testimony, or circumstantial evidence such as consumer surveys" to

14 prove confusion.  In determining an appropriate remedy, the district court has wide

15 discretion. BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1092 (7th Cir.1994).

16 Trial courts should "carefully fashion remedies which will take all the economic

17 incentive out of trademark infringement." Playboy Enterprises, Inc. v. Baccarat

18 Clothing, 692 F.2d 1272, 1275 (9th Cir. 1982).

19     B. Reasonable Royalty

20     Foodmaker contends that it is entitled to a reasonable royalty for the time during

21 which Foodmex's restaurants used the Jack In the Box® trademark without its

22 permission. A reasonable royalty is a "subgroup of lost profits," representing "the

23 money the plaintiff would have made if the defendant had obtained a license." Trovan

24 v. Pfizer, 2000 WL 709149, *17 (C.D.Cal. May 24, 2000)  The Ninth Circuit recognizes

25 reasonable royalties as a measure of damages if the parties can show a franchising or

26 licensing relationship, since the "'reasonable royalty' device conjures a 'willing' licensor

27 and licensee." Id. at 18.

28     Foodmaker has provided evidence of a 1993 License and Development

96-CV-2090 J (POR)

1   Agreement contracted between Foodmex and Foodmaker. (Bjurstrom Decl. Ex. A.)

2   Foodmaker calculated an amount for royalty damages based on the contracted royalty

3   fee by FMI and Foodmex for the use of the Jack In The Box system and trademarks.

4   (Trial Brief at 6.) Based on this 4% fee, Foodmaker argues that it is entitled to actual

5   damages in the amount of $597,372. See Brinig Decl. at Ex. 1. Based on the evidence

6   presented at trial and in the papers, the Court finds this amount to be reasonable. The

7   Court GRANTS Foodmaker's request for royalties in the amount of $597,372.

8       **C. Damages Based on Lost Profits**

9       15 U.S.C. § 1117(a) also provides for a lost profit remedy, based on an accounting

10  of the defendant's profits from the infringing conduct.[3] Bishop v. Equinox International

11  Corp., 154 F.3d 1220, 1222 (10th Cir. 1998). An award of profits requires a showing

12  that defendant's actions "were willful or in bad faith." Id. at 1223 (citations omitted); see

13  also Restatement (Third) of Unfair Competition § 37(1)(a) (1995) (allowing award of

14  profits on showing that "the actor engaged in the conduct with the intention of causing

15  confusion or deception").

16      The burden lies on the plaintiff to "establish the defendant's gross profits from

17  the infringing activity with reasonable certainty....Once the plaintiff demonstrates gross

18  profits, they are presumed to be the result of the infringing activity." Lindy Pen Co.,

19  Inc., 982 F.2d at 1408 (citation omitted). It then becomes the defendant's burden "of

20  showing which, if any, of its total sales are not attributable to the infringing activity,

21  and additionally, any permissible deductions for overhead." Id. at 1408.

22      Foodmaker asserts that simple compensation for loss of royalties will not take the

23  economic incentive out of trademark infringement. Accordingly, Foodmaker asks this

24  court to award the profits earned by Foodmex's restaurants during the time of their

25  unauthorized use of the Jack In The Box® trademark. Foodmaker calculates this

26

27  [3]A plaintiff generally may not recover its own lost profits, as well as the defendant's

28  profits, in a trademark infringement action. United Phosphorus, Ltd. v. Midland
    Fumigant, Inc., 21 F.Supp.2d 1247, 1251 (D. Kansas, July 7, 1998.)

1  amount to be $1, 814, 047. (Brinig Decl. at § 7.) Based on the evidence presented, the

2  Court finds this to be a reasonable amount, and GRANTS Foodmaker's request for lost

3  profits in the amount of $1, 814, 047.

4  ### D. Corrective Advertising

5  Compensatory damages may include the cost of advertising to correct the

6  consumer confusion resulting from the defendant's infringement. First Savings Bank,

7  117 F. Supp. 2d at 1087; see also Big O Tire Dealers, Inc. v. Goodyear Tire & Rubber

8  Co., 561 F.2d 1365, 1374 (10th Cir.1977). An award of the cost of corrective advertising

9  " is intended to make the plaintiff whole." Adray v. Adray-Mart, Inc., 76 F.3d 984, 988

10  (9th Cir. 1996) (directing the jury to award prospective advertising costs "only to the

11  extent that the amount of money needed for corrective advertising does not exceed the

12  damage to the value of [the trademark].")

13  Foodmaker seeks to obtain the cost of prospective corrective advertising, namely

14  "the amount it would be required to spend in the future to dispel the confusion caused

15  by defendant's infringement." Id. The Ninth Circuit affirmed an award of prospective

16  advertising costs in Cher v. Forum Int'l., Ltd., 213 U.S.P.Q. 96, 103 (C.D.Cal. Jan 15,

17  1982), aff'd. in pertinent part, 692 F.2d 634, 640 (9th Cir.1982).

18  Foodmaker argues that, since Foodmex operated restaurants using the exact "Jack

19  In The Box" trademarks, consumers were "undoubtedly confused by Foodmex's

20  operation of unauthorized Jack In The Box restaurants." (Trial Brief at 9.) Foodmaker

21  contends that two cycles of a targeted corrective advertising campaign, at a total cost of

22  $2,113,400, are necessary to eliminate consumer confusion and repair the damage caused

23  by Foodmex. (Trial Brief at 11.)

24  Upon request of this Court, Foodmaker submitted a supplemental declaration on

25  March 15, 2002 in support of its request for damages. The declaration states that the

26  proposed corrective advertising campaign is "substantially different" from Jack In The

27  Box's general marketing campaign. (Decl. of Greg Joumas ("Joumas Decl.") at 2.) The

28  corrective campaign is designed to be both informative and restorative, and is not

1  designed for the purpose of increasing sales. (Joumas Decl. at 2.)

2      However, the Court finds that Foodmaker has not demonstrated the need for

3  over $2 million of corrective advertising. In fact, the evidence submitted by Foodmaker

4  shows that sales revenues for Jack In The Box's border stores actually increased every

5  year from 1996 until 2000. (Brinig Decl. at Ex. B.) Furthermore, if such extensive

6  advertising were necessary to restore Jack In The Box's image, the Court questions why

7  part of Jack In The Box's $25 million Southern California media budget was not spent

8  immediately to correct it. See Joumas Decl. at 2. In addition,  Foodmaker provides a

9  letter written in English, by a customer from St. Louis, Missouri, as evidence supporting

10  the need for corrective advertising. (Trial Brief at 10.)  However, the proposed

11  corrective campaign is targeted at a Spanish-speaking audience in Northern Mexico and

12  Southern California. (Brinig Decl. Ex. C.) The Court therefore finds that Foodmaker

13  has not demonstrated the need for corrective advertising to dispel consumer confusion,

14  and DENIES Foodmaker's request for corrective advertising costs.

15      **4. Prejudgment Interest**

16      In cases involving federal claims, a presumption favoring the award of

17  prejudgment interest applies. In re Oracle Securities Litigation, 132 F.R.D. 538, 547

18  (N.D. Cal. Oct. 18, 1990). Without prejudgment interest, "compensation of the plaintiff

19  is incomplete and the defendant has an incentive to delay." Gorenstein Enterprises, Inc.

20  v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir. 1989). The Seventh Circuit

21  suggested that district judges "use the prime rate for fixing prejudgment interest where

22  there is no statutory interest rate." Id.

23      Foodmaker calculated a prejudgment interest figure based on a 7% simple interest

24  rate calculation, applying it only "with respect to the actual damages calculations

25  involving reasonable royalties and lost profits." (Trial Brief at 12.) This amount is

26  $537, 087. The Court finds this amount to be a reasonable calculation, and GRANTS

27  Foodmaker's request for prejudgment interest in the sum of $537,087.

28

## CONCLUSION

Based on the foregoing, the Court grants total damages to Foodmaker of $2,948,506. The Court makes the following findings:

1. The Court GRANTS Foodmaker's request for royalties in the amount of $597,372.

2. The Court GRANTS Foodmaker's request for lost profits in the amount of $1,814,047.

3. The Court DENIES Foodmaker's request for corrective advertising costs.

4. The Court GRANTS Foodmaker's request for prejudgment interest in the sum of $537,087.

**IT IS SO ORDERED.**

DATED: March 20, 2002

NAPOLEON A. JONES, JR.
United States District Judge

cc: All Parties

- 7 -

96-CV-2090 J (POR)